## DOSS *et al. v.* WOOTEN.

1. The charge dealt with in the first division of the opinion, if erroneous, was not harmful to the defendants, and will not require a new trial.
2. The plaintiff was entitled to recover a reasonable expenditure made by him in order to remedy defects in a well on the land sold, which existed at the time of the sale, so as to put it in the condition the defendants represented it was at that time.
3. There was evidence to support the verdict.

FEBRUARY 28, 1913.

Equitable petition. Before Judge Maddox. Floyd superior court. December 6, 1911.

*George A. H. Harris & Son,* for plaintiffs in error.

*Copeland, Hamilton & Hutchens* and *Denny & Wright,* contra.

HILL, J. Wooten filed his petition against J. L. and N. C. Doss, showing substantially the following facts: He bought certain lands of the defendants, which were described in bonds for title executed and delivered to him. He made certain cash payments and gave his notes for the deferred payments, all of which except the first could be paid in wood at $1 per cord on the premises. Three quarters of an acre of the land purchased afforded a good site for a storehouse and for other building purposes, and this was specially pointed out to the plaintiff when he made the purchase as being a part of the land described in the bond for titles. At the time of the purchase the defendants informed him that they would place a fence around the particular three quarters of an acre, free of cost to him, and pointed out to him the post-holes then dug to receive the posts. They also pointed out rock corners then and now standing, showing the boundaries, the same being a fractional part of a lot. The three quarters of an acre is of the value of $150. The plaintiff is now informed, and defendants admit, that they did not own the three quarters of an acre when the purchase was made, nor do they own it now. They also mentioned that a certain well on the land, necessary and valuable for stock and tenants, was a lasting well and never went dry, but the well does go dry every summer; and in this matter the defendants knowingly misrepresented the facts relative to the well, and, it being one with a rock bottom, it will cost $50 to secure a well with lasting water. The land purchased was in part original forest, to wit 165 acres, more or less, consisting of pine, oak, gum, and other like timbers, of the value of $300. Plaintiff purchased all except the timber on about 40 acres. He has ascertained that previously to his purchase the defendants had sold all of the timber to one Dukes, who is now claiming the timber and is actually engaged in cutting the same, to the plaintiff's damage in the sum of $300. The loss of the three quarters of an acre of land, the dry well, and the timber cut rendered the premises purchased less valuable by $500. The defendants are insolvent. The prayer is that the defendants be restrained and enjoined from transferring, selling, or otherwise dis-

posing of or incumbering the promissory notes not yet due, for judgment against the defendants in the sum of $500, and that the same be credited on the plaintiff's notes as they fall due, etc.

The defendants, in their answer, deny many of the plaintiff's allegations, and aver good faith toward him. In answering the fourth paragraph of the petition, they aver that they delivered to the plaintiff the number of feet that his bond for title calls for, and that he was not deceived or defrauded in any way. Defendants were mistaken as to where the corners really were, but plaintiff was so informed, and he accepted the land as the corners should have been, and ratified the mistake. The land he claims is not worth more than $50.

The jury returned a verdict for the plaintiff in the sum of $192. To the overruling of a motion for a new trial the defendants excepted.

1. This case turns upon the charge of the court with reference to the measure of damages respecting the shortage in the land purchased; and that with respect to the damages flowing from the dry well. In the matter of the former, the court instructed the jury: "I charge you that he would have a right to recover, if he is entitled to recover on that item, the proportional part, the relative value, that is to say, as to the whole of it. If you should conclude he is entitled to recover at all on that item, look and see what he gave for the entire tract of land; and having done that, you will then see what proportion this three quarters of an acre bears to the whole, and to the price given for the whole, and in that way determine the value of this three quarters of an acre. I don't mean to say that you would be authorized to give plaintiff what the full value of the three quarters of an acre is proven to be, taken by itself, but, taking the entire purchase as a whole, see what it is worth—in other words, see what an acre in the tract would be worth, according to the price given for the whole, and that amount, under the law, would be the amount the plaintiff would be entitled to recover for the three quarters of an acre, if entitled to recover on that item at all." It is insisted that the above charge is error, because the method by which the jury should arrive at the value to be allowed for the three quarters of an acre was not sufficiently explained by the court, and was not fully given; and further, that the plaintiff bought by the tract and not by metes

and bounds, and therefore the plaintiff would not be entitled to recover for any fractional part of the three quarters of an acre. The plaintiff testified that one defendant "admitted that he did not own that three quarters of an acre. I have gotten possession of that three quarters of an acre by buying. it from another party. . . I have possession of a quarter of an acre that I bought from Mr. Dunaway. The other half acre I have not got possession of at all." In their answer the defendants aver that they "were mistaken as to where the corners really were, but plaintiff was so informed,. and he accepted the land as the corners should have been, and ratified the mistake."

The general rule as to the measure of damages is laid down in the case of *Smith* v. *Kirkpatrick*, 79 *Ga.* 410 (7 S. E. 258), as follows: "When a lot of land is sold by number, and one of the boundaries is misrepresented, whereby the purchaser fails to get some of the land he bought, the deduction to be made from the agreed price (in an action for the purchase-money) is generally in proportion to the value of the tract with the boundaries as represented, and its value with the true boundaries, computing value as at the time when the sale was made." See also the 2d division of the opinion. And in the case of *Adams* v. *White,* 138 *Ga.* 306 (75 S. E. 321), the general rule is held to be that "Where land is sold by the acre, generally an apportionment for a deficiency is to be made proportionally to the number of acres in the deficiency." In the present case the petition alleged a shortage in the land purchased. The bond for title did not describe the shortage. It will be observed that this is not a suit for a breach of warranty, or for a breach of the bond, dependent solely upon the description in the bond. The plaintiff alleged misrepresentation and fraud on the part of the defendants as to the quantity of the land sold, and also insolvency of the defendants. It was a suit for the loss of land which was pointed out to the plaintiff as being the land sold in the bond. In so far as the question of the statute of frauds might affect this case, because of insufficiency of description of that particular part of the land, and its being in parol, that was relieved by the defendants' plea, which admitted substantially the correctness of the plaintiff's allegation. The defendants' answer averred that they made a mistake as to the three quarters of an acre of land, and the plaintiff ratified it. The case first above cited lays down

the general rule where there is a mere shortage; and Mr. Justice Beck, in 138 *Ga.*, supra, draws a distinction between mere proof of shortage, without showing any particular piece of land was short, and proof that a certain piece of land was short. and the value of it. After stating the general rule, it was there held: "It follows from the foregoing ruling that evidence tending to show that certain portions of the land were more valuable than other portions was irrelevant and immaterial, and should not have been admitted over objections duly made." It follows from what has been said, and the rulings made in the cases cited supra, that if the charge in this case on the question of the shortage in the land and the consequent damages was incorrect at all, it was not injurious to the defendants, because, under the evidence, the rule that the court applied was probably more favorable to the defendants than the other rule. Moreover, the defendants themselves presented a written request for the court to charge the rule of proportion; and even if the charge complained of was error at all, it was not such that the defendants could be heard to complain, when the court had substantially followed a rule which they had invoked.

2. Complaint is made of the following charge of the court: "But in the event you find the plaintiff is entitled to recover on this item of the well, I charge you that he would only be entitled to recover just such damages as the plaintiff was put to, whatever that might be, to secure that constantly flowing water, if he did so secure it. Look to the evidence and see what that is, and whatever that might be the plaintiff would have a right to recover, if entitled to recover on such item at all." It is insisted that this charge is error, because it might have cost $200 to obtain constantly flowing water and the well be worth only $10, in which event the plaintiff would be allowed to recover a greater amount than the damage he suffered. The case is not merely a suit on a warranty or contract. It was alleged that the defendants knowingly misrepresented the condition of the well, and were insolvent, and that it would require $50 to put it in proper condition as represented; and it was sought to have an equitable credit entered upon the unpaid portion of the purchase-money notes. In such a case, we think that if the well could have been put in the condition represented. at a reasonable expenditure, the cost of so doing was a legitimate subject of recovery.

3.   There was evidence to support the verdict, and none of the other grounds of the motion require a new trial.

*Judgment affirmed.   All the Justices concur.*